[Civ. Nos. 36261, 38368. First Dist., Div. Four. Sept. 14, 1976.]

NICHOLSON-BROWN, INC., Plaintiff and Appellant, v.
CITY OF SAN JOSE et al., Defendants and Appellants.

COUNSEL

Howard, Prim, Rice, Nemerovski, Canady & Pollak, Stuart R. Pollak and Robert E. Gooding, Jr., for Plaintiff and Appellant.

Thelen, Marrin, Johnson & Bridges, Jesse B. Grove III, Bishop & Barry, Neil R. Bardack and Nelson C. Barry for Defendants and Appellants.

OPINION

**CHRISTIAN, J.**—Presented for review are trial proceedings in litigation between the City of San Jose ("the City") as owner of a public works project, Welton Beckett and Associates ("Welton Beckett") as the project architect and Nicholson-Brown, Inc. ("Nicholson-Brown") as the general contractor.

The City retained Welton Beckett to prepare plans and specifications for the construction of a new Police Administration Building; the contract was subsequently amended. Nicholson-Brown was awarded the construction contract; the contract designated Welton Beckett as the architect.

During construction, problems developed concerning the exterior concrete finish and other concrete used for the building. Experiments led to a number of departures from the original plans and specifications in regard to procedures and mix of the concrete. On November 26, 1968, work on the exterior concrete finish was suspended by Welton Beckett at the direction of the City. Nicholson-Brown claimed that it had sustained added costs due both to the suspension and to changes in the plans and specifications for the building.

On February 4, 1969, Nicholson-Brown filed with the City a claim for damages. On February 27, 1969, the director of public works sent a letter to Nicholson-Brown stating that he did not consider the City to be liable under the claim. However, a number of meetings took place between the representatives of the parties. At the request of the City, Nicholson-Brown submitted additional evidence of its asserted damages on February 13, 1970. Nicholson-Brown and the city attorney agreed that Nicholson-Brown should submit additional supporting legal authorities;

that was done on April 16, 1970. Nicholson-Brown subsequently filed a supplemental claim of damages April 23, 1970.

More meetings between the parties were held between March 30 and June 16, 1970. Another meeting was held between Nicholson-Brown and the mayor concerning a possible settlement of their dispute August 17 and 24, 1970. On November 24, 1970, Nicholson-Brown and the City entered into a written agreement settling some outstanding issues. Nicholson-Brown's complaint was filed December 8, 1970. After trial by jury the court rendered judgment for Nicholas-Brown and against the City and Welton Beckett in the amount of $85,000. Judgment of indemnity was rendered in favor of the City and against Welton Beckett. All parties have appealed.

■ The City contends that the court erred when it determined that the city was estopped from asserting the statute of limitations. Nicholson-Brown filed its claim February 4, 1969. The City was required to act on the claim within 45 days, i.e., by March 21, 1969. (Gov. Code, § 912.4, subd. (a).) There was no final action upon the claim by the City within that period; where a claim is not acted upon within the 45-day limit and that period is not extended by written agreement, the claim is deemed to have been rejected upon the last day of that period. (Gov. Code, § 912.4, subds. (b), (c).) Thus, the claim was rejected by operation of law March 21, 1969.

The then applicable statute provided that any suit to be brought upon the claim was required to be commenced either within six months after the date the claim was acted upon or deemed rejected, or within one year from the date of accrual of the cause of action, whichever was later. (Gov. Code, § 945.6, subd. (a) [amended Stats. 1970, ch. 104, § 6, p. 324, and ch. 346, § 1, p. 739].) The six-month limitation ran September 21, 1969; the one-year statute ran November 26, 1969. The court held that the City was nevertheless estopped from asserting the running of the statute of limitation.

■ "Generally speaking, four elements must be present in order to apply the doctrine of equitable estoppel: (1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his

injury. (*California Cigarette Concessions, Inc.* v. *City of Los Angeles* (1960) 53 Cal.2d 865, 869-870 [3 Cal.Rptr. 675, 350 P.2d 715]; *Lusitanian-American Dev. Co.* v. *Seaboard Dairy Credit Corp.* (1934) 1 Cal.2d 121, 128 [34 P.2d 139]; *Safway Steel Products, Inc.* v. *Lefever* (1953) 117 Cal.App.2d 489, 491 [256 P.2d 32]; *Transport Clearings-Bay Area* v. *Simmonds* (1964) 226 Cal.App.2d 405, 427 [38 Cal.Rptr. 116].) [5] The existence of an estoppel is generally a question of fact for the trial court whose determination is conclusive on appeal unless the opposite conclusion is the only one that can be reasonably drawn from the evidence. (*Albers* v. *County of Los Angeles* (1965) 62 Cal.2d 250, 266 [42 Cal.Rptr. 89, 398 P.2d 129].)" (*Driscoll* v. *City of Los Angeles* (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245].) ██ There was evidence that discussions of the issues in this litigation, between representatives of the parties, commenced February 4, 1969, and continued until a written agreement settling one issue was entered into between the City and Nicholson-Brown on November 24, 1970; Nicholson-Brown's complaint was filed 14 days later on December 8, 1970. The trial court could infer that Nicholson-Brown reasonably relied on the City's conduct as implying that the City would not assert the statute of limitations while settlement negotiations were in progress.

The cases relied upon by the City are to be distinguished by the fact that in the present case the City's own conduct justified reliance by Nicholson-Brown on an implied representation that the statute of limitations would not be asserted.

██ Welton Beckett contends that the action against it should have been held to be barred by the statute of limitations contained in Code of Civil Procedure section 339, subdivision 1. That statute provides for a two-year limitation upon contracts and upon obligations or liabilities not founded upon instruments in writing, with certain exceptions not pertinent here. As a general rule, this two-year statute of limitations is applicable to negligent performance of professional services which do not involve injuries to persons or real or tangible personal property. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 329, pp. 1171-1172; *Oakes* v. *McCarthy Co.* (1968) 267 Cal.App.2d 231, 249 [73 Cal.Rptr. 127]; also see *Avner* v. *Longridge Estates* (1969) 272 Cal.App.2d 607, 617 [77 Cal.Rptr. 633].) But Code of Civil Procedure section 337.1, subdivision (a), deals more specifically with the present case; it provides a four-year statute of limitations for the recovery of damages "from any person performing or furnishing the design, specifications, surveying,

planning, supervision or observation of construction or construction of an improvement to real property . . ." where there is "(1) Any patent deficiency in the design, specifications, surveying, planning, supervision or observation of construction or construction . . . ." Section 337.1 was added by statute in 1967, while both *Oakes* and *Avner* were pending, although after the complaints in both those cases were filed. "It is the settled law of this state that an amendment which enlarges a period of limitation applies to pending matters where not otherwise expressly excepted." (*Mudd* v. *McColgan* (1947) 30 Cal.2d 463, 468 [183 P.2d 10].) The Legislature, obviously aware of this rule, provided in section 337.1 that "Nothing in this section shall be construed as extending the period prescribed by the laws of this state for the bringing of any action" (Code Civ. Proc., § 337.1, subd. (c)), thus giving the statute of limitation prospective effect only. *Oakes* and *Avner* are thus distinguished from the present case; the four-year limitation of section 337.1 rather than the two-year limitation of section 339, subdivision 1, applies to cases of architectural malpractice. As Nicholson-Brown's cause of action obviously accrued at some point between August and November 26, 1968, and a complaint was filed on December 8, 1970, the trial court was correct in its determination that the cause of action against Welton Beckett was not barred.

█ Nicholson-Brown contends that it should have been granted prejudgment interest both against the City and against Welton Beckett. "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day . . . ." (Civ. Code, § 3287, subd. (a).) █ Prejudgment interest is recoverable where the damages are liquidated or, although unliquidated, can be established with reasonable certainty or are calculable by reference to a well established market value. (*General Insurance Co.* v. *Commerce Hyatt House* (1970) 5 Cal.App.3d 460, 474 [85 Cal.Rptr. 317].) The fact that there may be a slight difference between the amount of damages claimed and the amount awarded does not preclude an award of prejudgment interest. (*Coleman Engineering Co.* v. *North American Aviation, Inc.* (1966) 65 Cal.2d 396, 408-409 [55 Cal.Rptr. 1, 420 P.2d 713].) But where damages can be ascertained only by a judicial determination upon conflicting evidence as to the amount due, the defendant cannot be held to have known the amount he owed and thus cannot be subject to prejudgment interest upon the sum eventually awarded. (*Esgro Central, Inc.* v. *General Ins. Co.* (1971) 20

Cal.App.3d 1054, 1062 [98 Cal.Rptr. 153]; *Distefano* v. *Hall* (1968) 263 Cal.App.2d 380, 388 [69 Cal.Rptr. 691].)

 Nicholson-Brown sought damages of $131,596 for extra work performed. The claims included some items such as rental of equipment, and costs for rehandling subcontract material, for which the increase in cost to Nicholson-Brown due to delays caused by the City might be subject to ready calculation. But the claims also included damages caused by "inefficiency" in completing the work due to various causes such as winter weather, experimentation prior to the work stoppage on November 26, 1968, and adverse effects, loss of productivity, and impact on job morale due to the necessity of reestablishing and rescheduling the work crew following the break in operations; claim was also made for alleged loss of operating capital and bonding capacity that prevented the acquisition of other profitable work for Nicholson-Brown. Calculation of these alleged damages, which comprised a major component of the claimed total damages, was not subject to any readily available standard; neither the existence nor the amount of the additional costs incurred by Nicholson-Brown could be established without judicial determination, and the alleged loss of additional profitable work was similarly unascertainable absent a presentation of conflicting evidence to the trier of fact. (See *MacIsaac & Menke Co.* v. *Cardox Corp.* (1961) 193 Cal.App.2d 661, 673 [14 Cal.Rptr. 523].) Denial of prejudgment interest to Nicholson-Brown against the City was proper.

 Nicholson-Brown also contends that the court should not have stricken the jury's award of prejudgment interest in favor of Nicholson-Brown against Welton Beckett. That case went to the jury on the theory of negligence. "In an action for the breach of an obligation not arising from contract, and in every case of oppression, fraud, or malice, interest may be given, in the discretion of the jury." (Civ. Code, § 3288; see *King* v. *Southern Pac. Co.* (1895) 109 Cal. 96, 99 [41 P. 786].) But in cases such as this, involving tort claims, it is held that where the claim sued on was unliquidated and unascertainable, prejudgment interest is not to be awarded as additional damages. (*McNutt* v. *City of Los Angeles* (1921) 187 Cal. 245, 259 [201 P. 592]; *Perkins* v. *Blauth* (1912) 163 Cal. 782, 793 [127 P. 50]; *Estate of Piercy* (1914) 168 Cal. 755, 758 [145 P. 91] [dictum]; *Cox* v. *McLaughlin* (1888) 76 Cal. 60, 67 [18 P. 100].) The court did not err when it struck the jury's award of prejudgment interest against Welton Beckett.

Nicholson-Brown argues that, even if prejudgment interest on an unliquidated claim is not awardable under section 3288, Welton Beckett's conduct constituted malice so that the jury could have awarded prejudgment interest under the provision of section 3288 allowing such interest "in every case of oppression, fraud, or malice." But the evidence cited by Nicholson-Brown does not show malice, and the jury was not instructed on that theory. Thus, this assertion of Nicholson-Brown has no merit.

 Welton Beckett contends that it should not be required to indemnify the City where the City was held to have been estopped from asserting the defense of the statute of limitations. The contract between Welton Beckett and the City provided: "[Welton Beckett] shall indemnify [the City] against any loss or liability arising from the failure of [Welton Beckett] to perform [architectural] services and duties in the most skilled manner . . ." Welton Beckett claims that on three theories this indemnification provision should not have been enforced: (1) the City was actively negligent; (2) the City was barred from asserting its indemnification provision due to the City's failure to establish that it had used ordinary care; and (3) the City breached an implied covenant not to do anything which would deprive Welton Beckett of the benefits of the contract between them.

"[O]ne who seeks indemnification from his own negligence must draft the instrument in specific, precise and unambiguous terms . . ." (*Goldman v. Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40, 41 [41 Cal.Rptr. 73, 396 P.2d 377].) The contract provided for indemnification of the City by Welton Beckett for losses due to Welton Beckett's negligence, but not due to any negligence on the part of the City. Thus, were the City liable for its own negligence, it could not assert the right to indemnity against Welton Beckett. But the court found that "cross-complainant City of San Jose was not negligent in any respect with regard to the matters and events complained of by plaintiff Nicholson-Brown, Inc." Instead, the City's liability to Nicholson-Brown was predicated upon breach of the contract between the City and Nicholson-Brown. Welton Beckett, however, claims that the acts of the City which constitute an estoppel to assert the statute of limitations are to be construed as "negligence" for the purposes of preventing indemnification. This reasoning is fallacious; Welton Beckett's duty to indemnify is based upon Welton Beckett's own negligence which resulted in a breach of the City—Nicholson-Brown contract, and not upon any negligence on the part of the City. Where the

injury is solely the result of the indemnitor's negligence, the indemnification provision will apply. (See *Goldman* v. *Ecco-Phoenix Elec. Corp., supra*, 62 Cal.2d at p. 49.)

■ Welton Beckett next argues that because the City failed by want of ordinary care to establish a defense of the statute of limitations, the indemnification provision was inapplicable, citing Civil Code section 2778, subdivision 7. That section provides: "A stipulation that a judgment against the person indemnified shall be conclusive upon the person indemnifying, is inapplicable if he has a good defense upon the merits, which by want of ordinary care he failed to establish in the action." Welton Beckett asserts that the City, by its acts which constituted an estoppel to assert the statute of limitations, failed to establish "a good defense upon the merits . . . by want of ordinary care." A statute of limitations is a procedural defense which affects the remedy only, but not the substantive rights of the parties. (See 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 224, p. 1082.) The fact that the City was estopped from asserting the statute of limitations did not constitute a failure by the City to establish a defense upon the merits of the case.

■ Finally, Welton Beckett argues that the City breached its implied covenant of good faith and fair dealing. Every contract contains an implied covenant of good faith and fair dealing that neither party will do anything which will injure the right of the other party to receive the benefits of the contract and also that each party will do everything that the contract presupposes must be done to accomplish the contract's purpose. (*Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654, 658 [328 P.2d 198]; *Harm* v. *Frasher* (1960) 181 Cal.App.2d 405, 417 [5 Cal.Rptr. 367].) This covenant may alternatively be expressed as a promise not to do anything to make performance under the contract impossible or otherwise to frustrate performance of the contract. Although the City engaged in a course of conduct by which the City was estopped to assert the statute of limitations against Nicholson-Brown, the City's liability was based upon Welton Beckett's negligent performance of its duties. No acts were alleged or proved indicating that the City made Welton Beckett perform in a negligent manner or prevented proper performance; the acts constituting estoppel were part of a course of conduct separate and distinct from conduct related to the contract between the City and Welton Beckett. There is no showing of any lack of fair dealing on the part of the City.

The City requests that in the indemnification proceeding the trial court be directed to determine the amount of attorney's fees to be allowed for this appeal. In cases involving indemnification provisions this has been determined to be the proper procedure. (See *Schackman* v. *Universal Pictures Co.* (1967) 255 Cal.App.2d 857, 863 [63 Cal.Rptr. 607].)

Affirmed. Nicholson-Brown will bear its own costs. Welton Beckett will bear its own costs and the costs of the City. In 1/Civil 38368 the trial court is directed to determine the amount of attorney's fees to be awarded to the City against Welton Beckett for this appeal.

Caldecott, P. J., and Rattigan, J., concurred.

A petition for a rehearing was denied October 4, 1976.